**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  CLIFFORD DILBERT,                        No. C 05-00087 MEJ

12              Plaintiff,                   **ORDER GRANTING DEFENDANT'S
                                            MOTION FOR SUMMARY JUDGMENT**;
13      v.                                   **ORDER DENYING PLAINTIFF'S
                                            MOTION TO COMPEL**
14  JOHN E. POTTER, Postmaster General,

15              Defendant.
                                      /
16

17                        **I.   INTRODUCTION**

18          Pending before the Court is Defendant Postmaster General John E. Potter's Motion for

19  Summary Judgment (Dkt. #61).  Plaintiff *pro per* Clifford Dilbert has filed three Oppositions (Dkt.

20  ##65, 86, 100), to which Defendant filed Replies (Dkt. ##67, 101).  Also pending before the Court is

21  Plaintiff's Motion to Compel Discovery (Dkt. #47).  After consideration of the parties' briefs,

22  supporting materials, and oral argument, the Court GRANTS Defendant's Motion for Summary

23  Judgment, and DENIES AS MOOT Plaintiff's Motion to Compel.

24                        **II.   BACKGROUND**

25          Plaintiff initiated this action against Defendant by filing a Complaint on January 5, 2005,

26  asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the federal

27  Rehabilitation Act of 1973, 29 U.S.C. § 794.  (Dkt. #1).  Specifically, Plaintiff alleges that while he

28  was working for the United States Post Office ("USPS"), his supervisor unlawfully discriminated

against him based on his age and disabilities and refused to reasonably accommodate his mental and

**United States District Court**
For the Northern District of California

1 physical disabilities by allowing him to work a flexible schedule.  (Compl. ¶¶4-7.)  Plaintiff further

2 alleges that after he complained about the refusal to provide reasonable accommodations, his

3 supervisor began to monitor his work habits, thereby creating additional stress and aggravating his

4 disabilities.  (Compl. at ¶7.)

5       Defendant now moves for summary judgment on all of Plaintiff's claims.  On April 9, 2009,

6 the Court held oral argument on the parties' Motions.  Following oral argument, the Court ordered

7 the parties to submit additional materials and set deadlines for those submissions.  After a thorough

8 review of the parties' briefs and supporting materials, the Court now rules as follows.

9 ### III.   LEGAL STANDARD

10       Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

11 no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

12 law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

13 initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

14 depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

15 of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

16 party meets this initial burden, the burden then shifts to the non-moving party to present specific

17 facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

18 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-movant's

19 bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

20 for summary judgment.  *Anderson*, 477 U.S. at 247-48.  The nonmoving party has the burden of

21 identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan*

22 *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court to scour the record

23 in search of a genuine issue of triable fact.  *Id*.  If the nonmoving party fails to make this showing,

24 "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.  An issue of

25 fact is material if, under the substantive law of the case, resolution of the factual dispute might affect

26 the case's outcome. *See Anderson*, 477 U.S. at 248.  Factual disputes are genuine if they "properly

27 can be resolved in favor of either party." *Id*. at 250.  Accordingly, a genuine issue for trial exists if

28 the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light

**United States District Court**
For the Northern District of California

1   most favorable to that party, could resolve the material issue in his or her favor.  *Id.*  "If the evidence

2   is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at

3   249-50 (internal citations omitted).

4          A district court may only consider admissible evidence in ruling on a motion for summary

5   judgment.  Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

6   Unauthenticated documents and hearsay evidence are inadmissible, and consequently may not be

7   considered on summary judgment.  *Orr*, 285 F.3d at 773-74, 778.

8                                           **III.   DISCUSSION**

9   **A.      Material Facts**

10         Except as otherwise indicated, the Court finds the following facts to be undisputed.

11         On August 29, 1998, Plaintiff began working for the United States Postal Service as the

12   Environmental Compliance Coordinator at San Jose Customer Services District.  (Compl. at ¶5; Dkt.

13   #63, "Declaration of Clifford Dilbert"/"EEO Investigative Affidavit (Complainant)," at 7, ¶3.)

14   Plaintiff avers that his physical disabilities at the time he was employed by USPS consisted of

15   chronic pain syndrome, fibromyalgia, surgical neuropathy, carpel tunnel syndrome, and tendonitis

16   (Compl. at ¶5; Dilbert Decl. at 11).  He indicates that his mental disabilities included stress-related

17   migraine headaches, irritable bowel syndrome, and fatigue.  (Compl. at ¶5.)

18         From August 1998 until June 2000, Bill McEnery was the Manager of Administrative

19   Support at the San Jose Customer Services District and Plaintiff's supervisor.  (Dkt. #62,

20   "Declaration of Jack Stout"/ "EEO Investigative Affidavit (Witness)" at 7.)  Jack Stout replaced

21   McEnery in June 2000 and became Plaintiff's supervisor.  (*Id.*)  In December 2000, Stout informed

22   Plaintiff that he would be required to begin his work day at 7:30 a.m.  (Stout Decl. at 6.)  Up until

23   that point, Plaintiff had been beginning his work day at 6:00 a.m.  (Stout Decl. at 6; Dilbert Decl. at

24   7.)  Stout required all Administrative Support employees to begin work at 7:30 a.m. and work until

25   4:00 p.m.  (Stout Decl. at 6; Dilbert Decl. at 7.)  Normal business hours for the San Jose District

26   were 8:00 a.m. to 4:30 p.m.  (Stout Decl. at 6.)  As a result, Plaintiff was required to begin his work

27   day at 7:30 a.m. rather than 6:00 a.m.  One other worker who began his work day at 7:00 a.m. was

28   also required to change his schedule to begin at 7:30 a.m.  (Stout Decl. at 7.)

3

**United States District Court**
For the Northern District of California

1    Plaintiff objected to the change in his work schedule.  (Dkt. #63 at ¶3; Stout Decl. at 6.)  On

2  December 20, 2000, Plaintiff wrote Stout a letter requesting reasonable work accommodations.

3  (Stout Decl. at 6.)  After Stout informed Plaintiff of the required start time, Plaintiff continued to

4  report to work at 6:00 a.m.  (Stout Decl. at 6.)  On January 19, 2001, Stout wrote Plaintiff a letter

5  formally requesting him to report to work starting January 22, 2001, at 7:30 a.m.  (Stout Decl. at 6.)

6  In that letter, Stout also informed Plaintiff that there was no flex time for Administrative Support

7  employees.  (Stout Decl. at 6.)

8    According to Defendant, Plaintiff objected to the change in schedule because coming into the

9  office later would add an hour to his commute.  (Stout Decl. at 6.)  Plaintiff, on the other hand,

10  contends that at the time of his hiring in August 1998, the hiring committee and his then-supervisor,

11  Mr. McEnery, granted him a flexible work schedule as an accommodation for his physical

12  disabilities.  (Dilbert Decl. at 12, ¶18; Dkt. #100 at 2.)  Plaintiff also asserts that he provided Stout

13  medical documentation relating to his disabilities prior to the change in his work schedule and that

14  Stout was aware that he was disabled and had flexible hours for the previous two years.  (Dilbert

15  Decl. at 7, ¶3.)  Stout, however, avers that he was not aware of Plaintiff's mental disabilities and first

16  became aware of Plaintiff's physical disabilities in January 2001, when Plaintiff told him.  (Stout

17  Decl. at 6.)

18    Subsequently, on May 11, 2001, Stout informed Plaintiff that he was abusing sick leave and

19  placed Plaintiff on a restricted sick leave list.  (Stout Decl. at 7; Dilbert Decl. at 8.)  Stout indicates

20  that Plaintiff was failing to bring in the proper documentation from his attending physician.  (Stout

21  Decl. at 7.)  Plaintiff, however, states that Stout refused to answer why Stout placed him on the

22  restricted sick leave list and refused to accept documentation from one of his doctors.  (Dkt. #100 at

23  11; Dilbert Decl. at 8.)  Plaintiff further asserts that Stout told him that too many people were taking

24  sick leave, it was costing the District too much money, and he had to cut down on costs.  (Dilbert

25  Decl. at 8.)  Defendant contends that Stout explained to Plaintiff that he was responsible for

26  monitoring sick leave for the office and that if too many people in the office took sick leave, it

27  would affect the San Jose District.  (Stout Decl. at 7.)

28

4

**United States District Court**
For the Northern District of California

1    Plaintiff also alleges that, in August 2000, Stout retaliated against him by giving him one

2  week to move his desk from one part of the building to another, despite the fact that Plaintiff was

3  injured and had his arm in a sling. (Dkt. #63 at 8, ¶6; Dkt. #95 at 2, ¶c.)  He avers that when he

4  objected, Stout became loud and told him to move his office in one week or face disciplinary action.

5  (*Id*.)

6  **B.    Plaintiff's Claims**

7         1.     Title VII

8         As indicated above, Plaintiff's Complaint alleges that Defendant discriminated against him

9  in violation of Title VII.  (Compl. at ¶3.)  Title VII provides that an employer may not "discriminate

10  against any individual with respect to his compensation, terms, conditions, or privileges of

11  employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C.

12  2000e-2(a)(1); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 n.4 (1973).  Here,

13  Plaintiff has alleged that Stout discriminated and retaliated against him based on his age and

14  disabilities.  Neither age nor disability fall within the ambit of Title VII.  Accordingly, to the extent

15  that Plaintiff has asserted a claim arising under Title VII, Defendant is entitled to summary

16  judgment.

17         2.     Age Discrimination in Employment Act

18         Next, Defendant contends that he is entitled to summary judgment on any age discrimination

19  claim Plaintiff may be asserting.  Although Plaintiff cited Title VII as authority for his claim based

20  on age discrimination, the proper statutory authority is the Age Discrimination in Employment Act

21  ("ADEA"), 29 U.S.C. § 633a.  The Court will therefore construe Plaintiff's allegations of

22  discrimination based on age as a claim pursuant to the ADEA.

23              a.     *Disparate Treatment*

24         Under the ADEA, "[a]ll personnel actions affecting employees . . . who are at least 40 years

25  of age . . . in the United States Postal Service . . . shall be made free from any discrimination based

26  on age."  29 U.S.C. § 633a(a).  To establish a violation of the ADEA under a disparate treatment

27  theory of liability, Plaintiff must first establish a *prima facie* case of age discrimination.  *See*

28  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280-81 (9th Cir. 2000) "The *prima facie* case may be

1   based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas*

2   [], or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889

3   (9th Cir. 1994) (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1986)).  To establish

4   a presumption of age discrimination in support of an ADEA claim, a plaintiff must show that: (1) he

5   was within the protected age group (*i.e.*, over 40 years old); (2) he performed his job satisfactorily;

6   (3) he suffered an adverse employment action; and (4) similarly situated employees not in his

7   protected class were treated more favorably.  *See Coleman*, 232 F.3d at 1281.  Satisfaction of these

8   elements gives rise to a rebuttable presumption of discrimination.  *See Schnidrig v. Columbia Mach.,*

9   *Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (citing *McDonnell Douglas*, 411 U.S. at 802).

10         At that point, the burden then shifts to the defendant to articulate a legitimate,

11  nondiscriminatory reason for the employment decision.  *See Coleman*, 232 F.3d at 1281.  If the

12  defendant rebuts the inference of discrimination, the plaintiff must show that the articulated reason

13  for the employment action is a pretext for discrimination.  *Id.*  A plaintiff can prove pretext in two

14  ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence;

15  or (2) directly, by showing that unlawful discrimination more likely motivated the employer.

16  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citing *Godwin v. Hunt Wesson,*

17  *Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998)).

18         Here, Defendant concedes that Plaintiff is over 40 years old and, at least for purposes of

19  Plaintiff's ADEA claim, does not make any argument regarding Plaintiff's job performance.  (*See*

20  Mot. at 8.)  Defendant, however, argues that Plaintiff's age discrimination claim fails because he

21  cannot establish two elements of the *prima facie* case: that he suffered an adverse employment

22  action and that he was treated differently.

23         With respect to the first element, Defendant asserts that, "[P]laintiff acknowledges that his

24  new supervisor did nothing more than request that [P]laintiff show up to work when the office was

25  open rather than when it was closed and no other employees were around."  (Dkt. #67 at 2-3.)  Thus,

26  Defendant contends that requiring Plaintiff to work normal business hours - like every other

27  employee in the office - does not amount to an adverse employment action.

28

**United States District Court**
For the Northern District of California

1  Plaintiff counters that he "had a flex hour schedule due exclusively to a negotiated hiring

2  accommodation clause," which was breached when Stout required him to work a regular work day

3  schedule.  (Dkt. #100 at 9.)  Notably, Plaintiff fails to point to any evidence substantiating that the

4  clause existed or specifying the terms of the clause.  In his post-hearing filing, Plaintiff submits

5  minutes from an April 18, 2001 meeting of the District Reasonable Accommodation Team.  (Dkt.

6  #110, Ex. 1.)  While this document reflects that Plaintiff raised the issue of a flex-time schedule

7  before the Reasonable Accommodation Team, the Minutes do not - as Plaintiff represents - indicate

8  that Plaintiff was *granted* a flex-time schedule as a condition of his employment at the time he was

9  hired.  In fact, the Minutes state that "USPS does not have flexible leave schedules," and, "as the

10  Environmental Coordinator, [Plaintiff] is needed in the office between 7:30 a.m. and 4:00 p.m."

11  (*Id.*)  Thus, Plaintiff's proffered evidence actually cuts against his claim that flex hours were a

12  condition of his employment.  Plaintiff also submits an email string between him and Bill McEnery.

13  (Dkt. #110, Ex. 2.)  In the email dated May 21, 2001, Mr. McEnery states:

14       Cliff,
         Shortly after you were hired, I agreed that you could report to work at
15       a very early hour in consideration of your extremely long commute.
         My only requirement was that you work a regular 8 hour day.  The
16       arrangement was in effect until my retirement and there were never
         any problems.  You continued to perform your duties in a good and
17       sound manner and the early arrival time caused no problems
         whatsoever.
18       Bill

19  (*Id.*)  Ths email, at most, indicates that Plaintiff's former supervisor allowed him to come into work

20  early "in consideration of [Plaintiff's] extremely long commute."  (*Id.*)  The email does not indicate

21  that working a flex-time schedule was a condition of Plaintiff's employment, or, more significantly

22  for purposes of this case, that it had been granted to accommodate Plaintiff's disability when he was

23  hired.

24  Nevertheless, even assuming that Plaintiff could show he was previously granted a flexible

25  work schedule, the Court agrees with Defendant that the change in Plaintiff's work hours did not

26  amount to an adverse employment action.  Particularly, Plaintiff did not suffer a reduction in hours

27  or pay or any other negative change to the conditions of his employment.  Rather, the change to

28  Plaintiff's work schedule was based on the requirement that *all* employees in his department work

7

United States District Court
For the Northern District of California

1   normal business hours.  Thus, Plaintiff was treated equally in terms of the hours he was required to

2   work.  The Court therefore agrees with Defendant that Plaintiff cannot show any adverse

3   employment action as a result of having to report to work at 7:30 a.m.

4          As to the second element, Defendant contends that Plaintiff cannot show that any other

5   employee under 40 was treated differently.  In each of his Oppositions, Plaintiff contends that other

6   employees were allowed to work flex schedules.  Despite his assertion, Plaintiff fails to point to any

7   record evidence demonstrating that other Service Administration employees not in his protected

8   class, *i.e.*, under age 40, continued to work flex schedules while he was required to adjust his to

9   normal business hours.  Having failed to show that other, younger employees were treated more

10  favorably, Plaintiff has not satisfied the fourth element of his *prima facie* case.  Taken together,

11  Plaintiff's failure to establish these elements of his *prima facie* case of discrimination are fatal to his

12  discrimination claim under the ADEA.

13         Further, even if Plaintiff was able to make the initial *prima facie* showing of discrimination,

14  Defendant argues that Stout has articulated a legitimate, non-discriminatory reason for the decisions

15  Plaintiff complains of in this action.  Specifically, with respect to requiring Plaintiff to begin work at

16  7:30 a.m., Stout stated that: (1) all employees of the Administrative Support staff had to report to

17  work at 7:30 a.m.; (2) it was difficult for Stout to supervise Plaintiff when he began work before the

18  normal start time; and (3) there is no flex time for Administrative Support employees.  (Stout Decl.

19  at 6.)  At this point, Plaintiff must show that these explanations are merely a pretext for

20  discrimination.  Aside from charging - without any concrete evidence in support - that Stout perjured

21  himself in his Declaration (*see* Dkt. #86 at 5-7), Plaintiff has not presented any convincing argument

22  that Stout's proffered explanations are unworthy or credence or that discrimination more likely than

23  not motivated his decisions.  Plaintiff has therefore failed to carry his burden on the final prong of

24  the burden-shifting analysis.

25         With respect to Stout's act of placing Plaintiff on restricted sick leave, even assuming

26  Plaintiff could make the required *prima facie* showing, Defendant has offered a legitimate, non-

27  discriminatory reason for Stout's decision to put Plaintiff on restricted sick leave.  Specifically, in

28  his Declaration, Stout states that Plaintiff was not bringing in the proper documentation from his

**United States District Court**
For the Northern District of California

1   attending physician.  (Dkt. #62 at 7.)  Plaintiff has not put forth either facts or evidence raising an

2   issue of fact that Mr. Stout's reason for his decision was a pretext for discrimination based on

3   Plaintiff's age.

4          In sum, because Plaintiff has not put forth sufficient evidence to either establish a *prima*

5   *facie* case of discrimination or to show that Defendant's proffered explanations are pretext for

6   discrimination, Plaintiff's ADEA claim based on disparate treatment fails.  Defendant is therefore

7   entitled to summary judgment on this claim.

8                          b.      *Retaliation*

9          Defendant contends that he is also entitled to summary judgment on any retaliation claim

10  Plaintiff may be asserting based on age or disability.[1]  To establish a *prima facie* case of retaliation,

11  the Plaintiff must demonstrate: (1) he engaged in a protected activity, (2) he suffered an adverse

12  employment action, and (3) that a causal link exists between the protected activity and adverse

13  action.  *Mannatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003).  If a plaintiff establishes a

14  *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory

15  reason for the adverse employment action."  *Id*.

16         Defendant contends that Plaintiff's retaliation claim fails because he has failed to explain

17  what activity resulted in the retaliation.  Reviewing Plaintiff's briefs, it appears that Plaintiff is

18  asserting that the protected activity he engaged in was *complaining* that his flex hour schedule had

19  been taken away.  However, because the alleged adverse employment action (changing Plaintiff's

20  work schedule) *preceded* Plaintiff's proffered protected activity (complaining about the change in

21  his work schedule), the adverse action cannot serve as a basis for retaliation for engaging in the

22  protected activity.  Moreover, as discussed above, Plaintiff has failed to establish that having to

23  work regular business hours, as opposed to a flex schedule, amounted to an adverse employment

24  action.  Having failed to make a sufficient showing as to these two elements, Plaintiff, then, cannot

25  satisfy the final element of showing the requisite nexus between the protected activity and the

26

27

28         [1]The standard for retaliation is the same under both the ADEA and the Rehabilitation Act.  Thus,
    the same analysis is also applicable to any retaliation claim under the Rehabilitation Act.

9

**United States District Court**
For the Northern District of California

1    adverse employment action.[2]  Accordingly, the Court grants summary judgment in favor of

2    Defendant on Plaintiff's retaliation claim.

3              3.        Rehabilitation Act Claims

4              Defendant next argues that he is entitled to summary judgment on Plaintiff's Rehabilitation

5    Act claims.  As Defendant correctly points out in his Reply, based on Plaintiff's Complaint and

6    Opposition briefs, it is unclear whether Plaintiff is proceeding on a failure to accommodate claim or

7    a disparate treatment theory.  The Court will therefore analyze Plaintiff's claims under both theories.

8              a.        *Failure to Accommodate*

9              Under the Rehabilitation Act, federal employees, including those employed by the USPS,

10   can seek relief for alleged discrimination on account of disability.  29 U.S.C. § 791(a)-(b) (2008).

11   The implementing regulations of the Rehabilitation Act provide that federal agencies "shall give full

12   consideration to the hiring, placement, and advancement of qualified individuals with disabilities."

13   29 C.F.R. § 1614.203(a) (2008).  The regulations further specify that the standards used to determine

14   a violation of the Rehabilitation Act are those set out in the ADA, 42 U.S.C. §§ 12101, 12111, and

15   12201, relating to employment.  29 C.F.R. § 1614.203(b); *see also Vinson v. Thomas*, 288 F.3d

16   1145, 1152 n. 7 (9th Cir. 2002).

17             When a plaintiff alleges a failure to accommodate a disability under the Rehabilitation Act,

18   the burden is on the plaintiff to prove that he is a qualified individual with a disability.  *See*

19   *Buckingham v. U.S.*, 998 F.2d 735, 739-40 (9th Cir. 1993).  Then, if accommodation of the plaintiff

20   as a qualified individual with a disability is required to enable the plaintiff to perform the essential

21   functions of the job, the plaintiff must provide evidence sufficient to make at least a facial showing

22   that reasonable accommodation is possible.  *Id.* at 740.  If in response to the plaintiff's evidence that

23   reasonable accommodation can be made, the employer presents credible evidence that reasonable

24   accommodation is not possible or practicable, the plaintiff bears the burden of coming forward with

25

26

27             [2]For the same reason, even if Plaintiff seeks to base his retaliation claim on Stout's decision to
     place him on restricted sick leave or Stout's directive that Plaintiff move his desk to another part of the
28   office building, Plaintiff has not put forth any evidence demonstrating a connection between his
     objection to the change in his work hours and being placed on restricted sick leave or being required to
     relocate his desk.  Any retaliation claim founded on these events therefore fail, as well.

10

**United States District Court**
For the Northern District of California

1    evidence that suggests that accommodation may in fact be reasonably made. *See Sisson v. Helms*,

2    751 F.2d 991, 993 (9th Cir. 1985).

3          Defendant contends that he is entitled to summary judgment on any failure to accommodate

4    claim because Plaintiff has not and cannot show that the accommodation he sought, namely, to begin

5    work at 6:00 a.m., was reasonable. (Mot. at 9.) In his Oppositions, Plaintiff agues that he was

6    entitled to a flex schedule based on an agreement he had with the hiring committee and that his

7    disabilities require that he work flex hours. As indicated above, Plaintiff has failed to point to any

8    evidence substantiating this assertion. That aside, Plaintiff has not presented evidence or even

9    explained how arriving to work at 6:00 a.m. (as opposed to an hour and a half later) serves to

10   accommodate his physical and mental disabilities such that he is able to perform his job duties.

11   Moreover, Defendant has proffered uncontroverted evidence that allowing Plaintiff to begin work at

12   6:00 a.m. was not practicable. As set forth in Stout's Declaration, because business hours for the

13   San Jose Customer Service District were 8:00 a.m. to 4:30 a.m., employees needed to work during

14   those hours to support their customers. Further, Stout indicated that having Plaintiff work before the

15   standard start time prevented Plaintiff from being supervised. Plaintiff has failed to present evidence

16   controverting Stout's statements or showing that his early start time accommodation could

17   reasonably be made. Consequently, the Court finds that Defendant is entitled to summary judgment

18   on Plaintiff's Rehabilitation Act claim premised on a failure to accommodate theory of liability.

19                    b.       *Disparate Treatment*

20         In order to establish a *prima facie* case of discrimination under the Rehabilitation Act,

21   Plaintiff must demonstrate that he: (1) is an individual with a disability within the meaning of the

22   Rehabilitation Act; (2) is otherwise qualified for the position; and (3) was discriminated against

23   solely because of his disability. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1174 (9th

24   Cir. 1998). Here, even assuming Plaintiff can satisfy the first two elements, Plaintiff cannot

25   establish the final element. Specifically, Plaintiff has failed to proffer evidence demonstrating that

26   the requirement that he begin his work day at 7:30 a.m. or his being placed on restricted sick leave

27   was due *solely* to the fact that he was disabled. Rather, as indicated above, Stout articulated

28   legitimate non-discriminatory reasons for both decisions, neither of which related to Plaintiff's

11

**United States District Court**
For the Northern District of California

1   disabilities.  Because Plaintiff cannot make this showing, any disparate treatment claim under the

2   Rehabilitation Act necessarily fails, entitling Defendant to summary judgement on such claim.

3          Defendant also contends that, to the extent that Plaintiff bases his discrimination claim on

4   verbal abuse or inflammatory email messages that Mr. Stout allegedly sent to him, Plaintiff's claim

5   fails because he has failed to present evidence that the verbal abuse or emails actually occurred or

6   describing the severity of the verbal abuse and emails such that the Court could conclude they

7   amount to discrimination.  Reviewing the entirety of Plaintiff's filings, aside from generalized

8   references to "verbal abuse" and email messages, Plaintiff has failed to proffer any evidence or to

9   present any argument as to how the comments or emails support his discrimination claims.  The

10  Court therefore finds that Plaintiff has failed to put forth evidence creating a triable issue of fact on

11  any claim predicated on verbal abuse or email messages from Mr. Stout.  Defendant is thus entitled

12  to summary judgment on any Rehabilitation Act claim premised on disparate treatment.

13  **C.      Plaintiff's Motion to Compel**

14         As indicated above, on March 7, 2007, Plaintiff filed a Motion to Compel certain discovery

15  from Defendant.  Over the course of several months the Court held status hearings on Plaintiff's

16  discovery requests.  On March 12, 2009, Defendant filed his Final Responses to Plaintiff's

17  Discovery Requests.  (Dkt. #96.)  In his Final Responses, Defendant avowed that he has complied

18  with all of Plaintiff's requests by producing all relevant documents that Plaintiff requested.

19  Defendant also indicated that the only documents that remained outstanding were Plaintiff's medical

20  reports from Stanford.  At the April 9 hearing, the Court ordered Defendant to follow-up on the

21  request for the medical records and advise the Court of the status of their production.  (*see* Dkt.

22  #103.)  On April 17, 2009, counsel for Defendant filed a Declaration stating that all medical records

23  in existence and responsive to Plaintiff's document requests have been produced to Plaintiff. The

24  Court finds that Defendant has satisfied all of Plaintiff's outstanding discovery requests.

25  Accordingly, the Court **DENIES AS MOOT** Plaintiff's Motion to Compel.

26

27

28

**IV.   CONCLUSION**

      For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. #61) as to all of Plaintiff's claims.  Further, the Court **DENIES AS MOOT** Plaintiff's Motion to Compel (Dkt. # 47).

      **IT IS SO ORDERED.**

Dated:  June 1, 2009                                 _____
                                           MARIA-ELENA JAMES
                                         United States Magistrate Judge

**United States District Court**
For the Northern District of California

13

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DILBERT,

Plaintiff,

v.

POTTER et al,

Defendant.

Case Number: CV05-00087 MEJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 1, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Clifford Dilbert
V96613
Mule Creek State Prison
P.O. Box 409060
Ione, CA 95640

Dated: June 1, 2009

Richard W. Wieking, Clerk
By: Brenda Tolbert, Deputy Clerk

14